UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERELL WELCH, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | No. 1:20-cv-02693-JMS-MG |
| | ) | |
| KROGER LIMITED PARTNERSHIP I, | ) | |
| | ) | |
| *Defendant.* | ) | |

## **ORDER**

Plaintiff Terell Welch seeks recovery for injuries sustained while entering a grocery store owned by Defendant Kroger Limited Partnership I ("Kroger"). [Filing No. 1-1.] Kroger has filed a Motion for Summary Judgment, [Filing No. 33], which is ripe for the Court's review.

### I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make

credibility determinations on summary judgment because those tasks are left to the factfinder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the

party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).   However, "[w]hen the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016).

### A.  Kroger's Cleaning Policies

Kroger operates a chain of grocery stores, including one located at 227 W. Michigan St. in Indianapolis, Indiana ("the Store"). [Filing No. 35-2 at 1.]  Before entering or leaving the Store's main shopping area, customers enter a small vestibule area ("the Lobby"). [Filing No. 34.]  The Lobby is also where Kroger stores shopping carts for its customers' use. [Filing No. 34.]  No deliveries are made to the Store through the Lobby. [Filing No. 35-2 at 1.]

The Lobby is "routinely cleaned" and maintained by Kroger employees. [Filing No. 35-2 at 1.]  Kroger employees are trained to inspect the Store "no less than once every hour." [Filing No. 35-2 at 1; Filing No. 35-3 at 1.]  However, the Lobby is typically inspected every fifteen minutes or less. [Filing No. 35-2 at 1.]  Members of the Kroger management team also "routinely" walk through the Store on a "continuous basis" and inspect the floor. [Filing No. 35-2 at 2.]

Kroger also maintains a Customer Incident Prevention policy, which requires that "[a] minimum of two (2) signs must be used with any hazard[ous] condition" and that employees "[n]eed to have several [signs] up anytime weather conditions are unfavorable." [Filing No. 42-2 at 4.]  The policy further requires that "[s]pecial attention should be given to the entryway and high traffic areas during periods of unfavorable weather to ensure safe floor conditions for store traffic." [Filing No. 42-2 at 5.]  Kroger trains its employees to "continually look for spills and other substances" which may be on the floor. [Filing No. 35-2 at 1; Filing No. 35-3 at 1.]  If a Kroger

employee locates a substance on the floor, Kroger trains its employees to "immediately clean up the spill or substance, to stay with any spill until another employee can clean it up, or to place a caution cone (or cones) near the spill or substance and then attend to its removal."  [Filing No. 35-2 at 1; Filing No. 35-3 at 1.]

**B.  The Events Prior to Mr. Welch's Accident**

The evening of December 19, 2019 was wet, snowy, and icy.  [Filing No. 35-1 at 21; Filing No. 35-2 at 2.]  Prior to Mr. Welch's arrival at the Store, Kroger attached a grey "pig mat" to the Lobby floor in front of one of the customer entrances.  [Filing No. 35-2 at 2; Filing No. 34.]  Kroger also placed a yellow caution cone to the right of that Lobby entrance.  [Filing No. 35-2 at 2; Filing No. 34.]  The pig mat was secured to the Lobby floor with adhesive and did not move when customers stepped on it.  [Filing No. 35-2 at 2.]

The following picture depicts the Lobby, including the pig mat and yellow caution cone, on December 19, 2019 at approximately 7:20 p.m.:



[Filing No. 34 at 19:20:31.]

In the hour preceding Mr. Welch's arrival at the Store, Todd Page, a Kroger employee, entered the Lobby on five separate occasions to return shopping carts.  [Filing No. 34 at 18:20:53

– 19:07:45.]  While returning shopping carts, Mr. Page inspected the Lobby but did not observe water on the floor.  [Filing No. 35-3 at 2.]  During the same time period, neither Mr. Page nor any other Kroger employee mopped the Lobby floor or wrung out the pig mat.  [Filing No. 34; Filing No. 35-3.]

### C.  Mr. Welch's Accident

Around 7:22 p.m. on the evening of December 19, 2019, Mr. Welch attempted to enter the Store through the Lobby to make a withdrawal at the Store's Customer Service Desk.  [Filing No. 35-1 at 54-55.]  When entering the Lobby, Mr. Welch stepped upon the pig mat and shortly thereafter slipped and fell, landing on his right hip and twisting his knee ("the Accident").  [Filing No. 34 at 19:22-19:23; Filing No. 35-1 at 56.]  Mr. Welch does not recall seeing the yellow caution cone or the pig mat prior to the Accident.  [Filing No. 35-1 at 21-22.]

The following picture depicts Mr. Welch laying on the Lobby floor immediately after the Accident in the Lobby on December 19, 2019 at approximately 7:22 p.m.



[Filing No. 34 at 19:22:18.]

5

Mr. Welch recalls being in immediate pain after the Accident.  [Filing No. 35-1 at 49-60.] Mr. Welch also recalls that after the Accident, he was damp "from the floor" and that his pants and side were wet.  [Filing No. 35-1 at 63-64.]

Shortly after the Accident, several individuals came to Mr. Welch's aide, including the Store's manager, Larry Schultz.  [Filing No. 34; Filing No. 35-2 at 2.]  Mr. Schultz asked Mr. Welch if he was in pain and waited with Mr. Welch in the Lobby until emergency medical services ("EMS") arrived.  [Filing No. 34 at 19:23-19:34; Filing No. 35-1 at 59-61.]  Upon their arrival, the EMS providers offered Mr. Welch a gurney and asked if he would like to be transported to a hospital. [Filing No. 35-1 at 66-70.]  Mr. Welch declined and was able to stand.  [Filing No. 35-1 at 66-70.]  Mr. Welch then shook Mr. Schultz's hand and proceeded into the Store to complete his previously intended withdrawal.  [Filing No. 35-1 at 67-68.]

### D.  Mr. Welch's Injuries and Medical Treatment

The morning after the Accident, Mr. Welch sought treatment for the injuries that he sustained during the Accident.  [Filing No. 35-1 at 68.]  Prior to the Accident, Mr. Welch previously tore the Anterior Cruciate Ligament ("ACL") in his right knee, which required two surgeries.  [Filing No. 35-1 at 16-17.]  As a result of the Accident, Mr. Welch reinjured his right knee and had two additional surgeries, including a total knee revision.  [Filing No. 35-1 at 15-17; Filing No. 35-1 at 71.]  While Mr. Welch previously had a "small" scar on his knee, his subsequent surgeries resulted in a "real, real noticeable, super-long" scar.  [Filing No. 35-1 at 78.]  Mr. Welch's knee injury has also required ongoing care.  [Filing No. 35-1 at 42-44.]

Mr. Welch also sustained a contusion on his hip as a result of the Accident, which took several months to heal.  [Filing No. 35-1 at 79-80.]  Since the Accident, Mr. Welch's gait has been "not right," which has impacted his daily living activities such as standing, sitting, driving,

walking, and sleeping.  [Filing No. 35-1 at 79-80.]  Mr. Welch's injuries have also negatively

impacted his social life.  [Filing No. 35-1 at 80.]

### E.  Kroger's Response to the Accident

The evening of the Accident, Mr. Schultz completed a Kroger Incident Repot.  [Filing No.

35-2 at 7-10.]  Shortly after the Accident, Mr. Welch was contacted by a representative from

Kroger.  [Filing No. 35-1 at 71.]  Mr. Welch recalls that the Kroger representative inquired as to

"what could [Kroger] do to prevent this from happening [in the future]."  [Filing No. 35-1 at 71.]

Mr. Welch spoke to this Kroger representative "one or two" additional times.  [Filing No. 35-1 at

73.]

### F.  This Lawsuit

Mr. Welch filed this lawsuit on August 18, 2020 in Marion Superior Court.  [Filing No. 1-

1.]  Kroger then removed the case to this Court pursuant to 28 U.S.C. § 1332.  [Filing No. 1.]

Kroger subsequently filed a Motion for Summary Judgment.  [Filing No. 33.]

### III.
#### DISCUSSION

Kroger argues that summary judgment is appropriate because: (1) it did not create the

alleged dangerous condition that led to the Accident; and (2) it did not have actual or constructive

notice of the alleged dangerous condition prior to the Accident.  [Filing No. 36 at 22-31.]

Specifically, Kroger argues that the video recording of the Accident "clearly establishes" that no

Kroger employee caused there to be water on the Lobby floor.  [Filing No. 36 at 20.]  Kroger

further argues that the "undisputed testimony" of Mr. Page establishes that there was no water on

the Lobby floor "until the moment" that Mr. Welch slipped.  [Filing No. 36 at 20.]  Rather, Kroger

argues that the evidence "confirms or at a minimum strongly suggests" that Mr. Welch created the

alleged dangerous condition which "caused him to fall when one of his feet stepped over the floor mat." [Filing No. 36 at 20.]

Mr. Welch responds[1] that there are "significant factual disputes" at issue regarding: (1) whether Kroger caused the water to accumulate in the Lobby "by failing to properly wring out or replace the pig mat at its entrance" and by failing to provide "an area that can adequately absorb all the water during a weather event"; and (2) whether Kroger had actual or constructive knowledge of the wet conditions in the Lobby. [Filing No. 43 at 18.] Mr. Welch argues that he did not bring water into the Store, and "a jury, as factfinder, could determine the water was from the oversaturated pig mat that . . . Kroger did not replace or wring out." [Filing No. 43 at 16.] Mr. Welch further argues that Kroger demonstrated its knowledge of the alleged dangerous condition by placing a pig mat and a caution cone in the Lobby and that "Kroger cannot argue it did not know of the dangerous condition while simultaneously warning [customers] of the same dangerous condition." [Filing No. 43 at 14-15.]

Kroger replies that the video evidence "clearly" demonstrates that there was not water on the Lobby floor and a "careful review of the video footage" establishes that Mr. Welch "created the alleged dangerous condition which caused him to fall." [Filing No. 50 at 4-5.] Kroger further replies that the evidence demonstrates that "no Kroger employee caused water to be on the [Lobby]

---

[1] The Court notes that Mr. Welch's counsel cites extensively to Ind. Trial R. 56 and cases decided under that standard, rather than Fed. R. Civ. P. 56. [Filing No. 43] The Court reminds counsel that Indiana state courts utilize a different summary judgment standard than the summary judgment standard used in federal courts. *Compare* Ind. Trial R. 56 *with* Fed. R. Civ. P. 56; *see also Kader v. State, Dep't of Correction*, 1 N.E.3d 717, 726 (Ind. Ct. App. 2013)(noting that "summary judgment procedure in Indiana differs significantly from the federal procedure" where Indiana procedure requires the movant to "designate sufficient evidence to foreclose the nonmovant's reasonable inferences and eliminate any genuine factual issues").

floor" and "no designated evidence supports [Mr. Welch's] implicit assertion that the [pig mat] needed to be rung out in the hour prior to [his] fall."  [Filing No. 50 at 2-3.]

When the Court exercises diversity jurisdiction over an action, it is "obliged to apply state law to the substantive issues in the case."  *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing Erie RR. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  The parties do not dispute that Indiana law governs this action.  The parties do not dispute that Mr. Welch was an invitee to Kroger's premises, and, therefore, Kroger owed Mr. Welch a duty to exercise reasonable care.  *Id.*  The Indiana Supreme Court has adopted the Restatement (Second) of Torts § 343 as the "best definition" of the duty a landowner owes to an invitee, which states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>   a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>   b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>   c) fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639-40 (Ind. 1991) (quoting the Restatement (Second) of Torts § 343); *see also Rogers v. Martin*, 63 N.E.3d 316, 322 (Ind. 2016).  To prevail on a premises liability claim, Mr. Welch must prove that Kroger had actual or constructive knowledge of the dangerous condition— here, the wet conditions in the Store's Lobby.  *Griffin v. Menard, Inc.*, 175 N.E.3d 811, 813 (Ind. 2021).

Turning to the present case, the Court is unpersuaded by Kroger's argument that there are no genuine issues of material fact in dispute.  This case principally turns on a central issue of fact— whether Kroger knew or by the exercise of reasonable care should have known of the existence of the water in the Lobby.  Kroger contends that the water that Mr. Welch slipped on was brought into the Store by Mr. Welch a mere moments before the Accident, whereas Mr. Welch contends

that the water was in the Lobby prior to his arrival.  [Filing No. 36 at 21-26; Filing No. 43 at 9-11;

Filing No. 50 at 5-7.]  Here, the designated evidence does not establish that Kroger is entitled to

judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

The Court finds that when considering the evidence in the light most favorable to Mr.

Welch, a reasonable finder of fact could conclude that Kroger knew or by the exercise of

reasonable care should have known of the allegedly dangerous condition that resulted in the

Accident.  While Kroger asserts the video evidence demonstrates that none of its employees

brought water into the Lobby, Mr. Welch asserts that this same video evidence demonstrates that

Kroger failed to wring out the pig mat and failed to place the caution cone in a place where

customers, including Mr. Welch, would have seen it.  [Filing No. 36 at 20-22; Filing No. 43 at 11;

Filing No. 43 at 18-20.]  Likewise, Kroger's placement of the pig mat and caution cone in the

Lobby during what Mr. Schultz described as "wet" conditions could be found by a reasonable

factfinder to indicate that Kroger was aware of slippery conditions in its Lobby or the potential for

such conditions.  [Filing No. 35-2 at 2.]

Additionally, the Court finds that the issues of whether Kroger failed to protect Mr. Welch

or failed to use reasonable care in protecting Mr. Welch are additional material issues of fact.

While Kroger argues that its employees routinely checked the Lobby for the presence of water,

Mr. Welch has raised an issue of fact regarding the adequacy of these inspections.  [Filing No. 43

at 15.]  Specifically, Mr. Welch asserts that the Lobby floor was wet prior to his arrival because

his side and pants became damp when he fell on the floor.  [Filing No. 35-1 at 63-64.]  Further,

Mr. Welch points to Kroger's Customer Incident Prevention policy which requires that a minimum

of "two (2) [hazard signs/cones] must be used with any hazard[ous] condition" and "several

[should be] up anytime weather conditions are unfavorable," but Kroger only placed one caution

sign in the Lobby which he argues was "poorly placed and not visible to customers." [Filing No. 42-1 at 4; Filing No. 43 at 11-18.] These factual disputes are properly left to the factfinder and cannot be resolved by the Court on summary judgment. *O'Leary,* 657 F.3d at 630.

The Court concludes by noting its displeasure with Kroger's approach to summary judgment. Kroger argues that its designated evidence "clearly" demonstrates that there was no water present in the Lobby prior to the Accident and that the video forecloses any argument to the contrary. [Filing No. 36 at 20-24.] However, the Court's "careful review" of Kroger's designated evidence has not borne out such a one-sided interpretation as to warrant summary judgment. A reasonable factfinder viewing this video could note the discoloration of the pig mat throughout the video, as well as the streak of water that appears during the Accident as evidence of preexisting water in the Lobby. [Filing No. 34.] The Court takes no position regarding the evidentiary value of the video except to say that Kroger is cautioned not to overstate the record to the Court. The Seventh Circuit has observed that pursuing summary judgment based on misrepresentations of the record can be "both costly and wasteful" and is often "much more expensive than simply pursuing a settlement or trying the case in the first instance." *Malin v. Hospira, Inc.,* 762 F.3d 552, 564–65 (7th Cir. 2014) (noting that such conduct "quickly destroys [a litigant's] credibility with the court"). Kroger is cautioned to avoid such conduct in the future.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Here, the Court finds that the record presents genuine issues of material fact and, therefore, a jury must decide whether Kroger knew or by the exercise of reasonable care should have known of the alleged dangerous condition and, if it did, whether

Kroger failed to protect Mr. Welch from that danger.  Therefore, Kroger's Motion for Summary

Judgment is **DENIED**.

## IV.
### CONCLUSION

     For the foregoing reasons, the Court **DENIES** Kroger's Motion for Summary Judgment,

[33].

Date: 2/4/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**